UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LURDUA COUSINS,

        Petitioner,

v.                                CASE NO. 04-CV-72000-DT
                                     HONORABLE VICTORIA A. ROBERTS

HUGH WOLFENBARGER,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Lurdua Cousins has filed a *pro se* habeas corpus petition under 28 U.S.C. §
2254.  The habeas petition attacks Petitioner's state convictions for delivery of cocaine.
Respondent urges the Court to deny the habeas petition.  The Court agrees, for reasons set forth
below, that the habeas petition must be denied.

### I.  Background

Petitioner was charged in Oakland County, Michigan with two counts of delivery of less
than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv), and one count of delivery of
50 to 224 grams of cocaine, Mich. Comp. Laws §333.7401(2)(a)(iii).  On January 8, 2002, a
circuit court jury found him guilty as charged.  The convictions arose from the sale of cocaine to
an undercover agent, Police Officer Christopher Schwartz, on September 28, 1998, October 6,
1998, and October 13, 1998.  The Michigan Court of Appeals has summarized the details of
these transactions as follows:

> Officer Christopher Schwartz was introduced to defendant by a third person and
> was given defendant's pager number and a telephone number.  On September 28,
> 1998, Schwartz called defendant's telephone number and left a message.  Shortly
> thereafter, Schwartz received a page from defendant.  Schwartz and defendant
> agreed that Schwartz would purchase a quarter ounce of cocaine for $325 from

defendant.  They agreed to meet at Ann's Lounge in the city of Warren.  Schwartz
went to Ann's Lounge.  When he did not see defendant in the building he walked
out to the parking lot.  He saw defendant in the parking lot, defendant said "hey,"
and motioned for Schwartz to get in defendant's car.  Schwartz paid for and
received the cocaine from defendant.  Schwartz stayed in the car for a couple of
minutes.

On October 6, 1998, Schwartz and defendant spoke and agreed to meet for
Schwartz to buy another quarter ounce of cocaine for $350.  Schwartz met with
defendant to make the purchase.  Defendant was driving a 1986 Honda.
Defendant got into Schwartz' car and there was another exchange of a quarter
ounce of cocaine for $350.  Schwartz told defendant that the price was high and
asked defendant about either lowering the price or letting Schwartz buy more with
a break on price.  Defendant told Schwartz that an ounce would cost $1,000 to
$1,100.

On October 13, 1998, Schwartz called defendant's pager number and
defendant called him back that day.  Schwartz asked him what two ounces of
cocaine would cost and defendant told him $2,400.  Later that day, Schwartz and
defendant agreed to meet at Ann's Lounge for Schwartz to buy two ounces of
cocaine for $2,300.  That night, Schwartz and defendant met.  Schwartz gave
defendant $2,300 in exchange for the two ounces of cocaine.

After each of the deliveries, Schwartz had the suspected cocaine field
tested and then taken back to the office where it was heat sealed and tagged as
evidence.  Schwartz attempted to make further contact with defendant but he was
unsuccessful.  He paged defendant but never received a call back.  When he was
unable to complete another deal, he went to the prosecutor's office to obtain
warrants for defendant's arrest.  Defendant was eventually arrested on July 3,
2000.

*People v. Cousins*, No. 239767, at 1-2 (Mich. Ct. App. Sept. 25, 2003).  Officer Schwartz was

the State's only witness at trial.  Petitioner did not testify, call any witnesses, or present any

evidence.

On January 23, 2002, the trial court sentenced Petitioner as a habitual offender, fourth

offense, to one to twenty years in prison for each count of delivering less than 50 grams of

cocaine and ten to twenty years for delivering 50 to 224 grams of cocaine.  The sentences were

ordered to run consecutively.

Petitioner raised his four habeas claims in the Michigan Court of Appeals, which affirmed his convictions in an unpublished *per curiam* opinion.  *See id.*  On April 15, 2004, the Michigan Supreme Court denied leave to appeal.  *See People v. Cousins*, 469 Mich. 1045; 679 N.W.2d 69 (2004) (table).[1]

Petitioner signed and dated his habeas petition on May 18, 2004.  The grounds for relief read:

I.   The trial court reversibly erred in denying the defense pre-trial motion to dismiss on pre-arrest delay grounds and in failing to dismiss on speedy trial grounds.

II.  The trial court reversibly erred in denying defense pre-trial motion to suppress the identification of him by Officer Schwartz.

III. The trial court reversibly erred in overruling the defense objection to testimony and evidence about the Secretary of State records for the automobile the police said the defendant drove to the sites where the drug sales allegedly occurred.

IV.  The trial court violated the U.S. and Michigan Constitutions in sentencing the defendant in LC #00-174122-FH to a prison term of 1 - 20 years on a habitual offender 4th supplement arising out of the delivery of less than 50 grams of a controlled substance conviction; to a prison term of 1 - 20 years on a habitual offender 4th supplement arising out of the delivery of less than 50 grams of a controlled substance conviction; and in LC #00-174124-FH to a prison term of 10 years to 20 years on a habitual offender 4th supplement arising out of the delivery of 50 - 224 grams of a controlled substance conviction.

Respondent argues in an answer to the habeas petition that Petitioner's third and fourth claims are state law claims, which are  not cognizable on habeas review, and that the state

---

[1] Justices Michael F. Cavanagh and Marilyn Kelly voted to grant leave to appeal.

3

court's resolution of Petitioner's constitutional claims was not objectively unreasonable.

Respondent also asserts "any and all available defenses including failure to exhaust state court

remedies, the statute of limitations, and procedural default for each claim to which it is

applicable."  Answer in Opposition to Pet. for Writ of Habeas Corpus, at 2.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's

adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's

decision is an "unreasonable application of" clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Avoiding

these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even

require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*

opinion) (emphasis in original).

4

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670 (2005).

### III.  Discussion

### A.  Prearrest Delay and Speedy Trial

The first habeas claim alleges that the trial court erred in not dismissing Petitioner's case on the grounds of pre-arrest delay and lack of a speedy trial.

### 1.  Pre-arrest Delay

Petitioner alleges that there was a two-year delay in arresting and arraigning him. He claims that this delay prejudiced him in that he lost potentially exculpatory evidence and was unable to locate witnesses who may have been able to provide exculpatory testimony. He also claims that the prosecutor should have been required to explain the delay and negate the possibility of gaining a tactical advantage before he (Petitioner) had to establish prejudice.

The Supreme Court has stated that

> [t]here is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*Hoffa v. United States*, 385 U.S. 293, 310 (1966).

"[N]o one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." *United States v. Lovasco*, 431 U.S. 783, 791 (1977). "Dismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982).

The drug transactions in this case occurred on September 28, 1998, October 6, 1998, and on October 13, 1998. A warrant for Petitioner's arrest was issued on March 10, 1999. Petitioner was arrested about sixteen months later on July 3, 2000. He moved to dismiss the charges against him on the basis of pre-arrest delay, but the trial court denied his motion because he failed to demonstrate any prejudice as a result of the delay. The Michigan Court of Appeals adjudicated the claim on the merits and concluded that the trial court did not err in denying Petitioner's motion.

Although the entire pre-arrest delay was about twenty-one months, the Sixth Circuit has found much longer periods of delay to be consistent with due process. *See United States v. Brown*, 959 F.2d 63, 67 (6th Cir. 1992) (citing cases in which pre-indictment delay was thirty-three months, twenty-nine months, and five years). Furthermore, Petitioner has not shown actual prejudice as a result of the pre-arrest delay. He contends, without going into any detail, that he lost exculpatory evidence and potential witnesses.

Petitioner also has not shown that the prosecutor intentionally delayed his arrest. The reason for the pre-arrest delay is not clear from the record, although Officer Schwartz testified at the preliminary examination that he was unable to make contact with Petitioner after the

6

prosecutor received the warrants.  Consequently, he placed the warrants on the law enforcement information network.  (Tr. Aug. 22, 2000, at 20.)  There is no evidence that the State exploited the delay to gain a tactical advantage over Petitioner.  Therefore, the state court's conclusion that the trial court did not err in denying Petitioner's motion to dismiss did not result in a decision that was contrary to, or an unreasonable application of, *Lovasco* or *Hoffa*.  Petitioner is not entitled to habeas corpus relief on the basis of pre-arrest delay.

## 2. Speedy Trial

Petitioner alleges next that the trial court should have dismissed his case on speedy trial grounds.  Whether a defendant was deprived of a speedy trial is a distinct question from whether there was pre-arrest delay.  A defendant's right against pre-indictment delay is circumscribed by a defendant's interest in freedom from indictment before probable cause is established, whereas freedom from post-indictment delay is guaranteed by the Speedy Trial Clause of the Sixth Amendment.  *Brown*, 959 F.2d at 66.

### a. Procedural Default Analysis

Respondent has not specifically alleged that Petitioner's speedy trial claim is procedurally defaulted.  Respondent did raise the defense of procedural default generally as to all claims where it might be applicable, and Petitioner had an opportunity to respond to Respondent's answer to the habeas petition.  Furthermore, the procedural error is clear from the record, and Petitioner anticipated a procedural default argument by suggesting in his habeas petition that defense counsel was "cause" for the default.  The Court therefore is justified in raising the issue *sua sponte* and without supplemental briefs from the parties.  *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002); *Elzy v. United States*,205 F.3d 882, 886-87 (6th Cir. 2000).

7

A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The doctrine of procedural default provides that,

> [w]hen a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000). An exception to this rule applies when "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test for determining whether a prisoner's constitutional claim is procedurally defaulted and barred from habeas review. Courts must ascertain whether: (1) there is an applicable state procedural rule and whether the petitioner failed to comply with that rule; (2) the state courts actually enforced the state procedural sanction; (3) the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim; and (4) the petitioner has shown cause for not complying with the procedural rule and actual prejudice from the alleged constitutional error. *Id*. at 138.

### i.  The Rule, Violation of the Rule, Reliance on the Rule, and Adequate and Independent Ground

"Michigan has a contemporaneous objection rule." *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003). Pursuant to that rule, defendants in criminal

cases must object in the trial court in order to preserve an issue for appellate review.  *People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999).  "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances."  *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).  Petitioner violated this general rule by not raising his speedy trial claim in the trial court.

The Michigan Court of Appeals relied on Petitioner's failure to object in the trial court by (1) stating that Petitioner did not properly preserve his speedy trial claim for appeal and (2) reviewing the speedy trial issue for "plain error which affected substantial rights."  Plain-error review by a state appellate court constitutes enforcement of a state's contemporaneous-objection rule.  *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied,* __ U.S. __, 125 S. Ct. 1939 (2005).

The State's contemporaneous objection rule was an adequate and independent basis for the state court's decision because the rule was in effect before Petitioner's trial, and the court of appeals actually relied on it.  The state court's alternative conclusion that Petitioner's right to a speedy trial was not violated does not prevent this Court from concluding that Petitioner procedurally defaulted his claim.  As explained in *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (emphasis in original),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935).  Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar as a separate basis for decision.  In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

Therefore, in order for this Court to consider Petitioner's claim, he must show "cause and prejudice" or a miscarriage of justice. *Coleman*, 501 U.S. at 750.

### ii. Cause and Prejudice

Petitioner alleges that the failure to raise his claim in the trial court "may well have been due to ineffective assistance of counsel." Brief in Support of Habeas Pet. at 20. Constitutionally ineffective assistance is "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, "the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state prejudicial proceedings,' *Rose v. Lundy*, 455 U.S. 509, 518 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*. at 488-89. In addition, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . . ." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Petitioner did not raise a claim of ineffective assistance of counsel as an independent claim in his state court briefs. He did "glancingly argue that defense counsel was ineffective for failing to assert [his] right to a speedy trial before the trial court." *Cousins*, Mich. Ct. App. No. 239767, at 5. However, the court of appeals declined to consider the ineffectiveness claim because Petitioner did not include the claim in his statement of questions presented, as required by *People v. Brown*, 239 Mich. App. 735, 748; 610 N.W.2d 234, 241 (2000).

A procedurally defaulted ineffective-assistance-of-counsel claim can "be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim." *Carpenter*, 529 U.S. at 453 (emphasis in original). However, because Petitioner has not alleged "cause and

10

prejudice" in connection with his ineffectiveness claim, the Court deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003), *cert. denied*, 540 U.S. 1151 (2004). In conclusion, the ineffectiveness claim is itself procedurally defaulted and cannot be deemed "cause" for Petitioner's procedural default of failing to raise a speedy trial argument in the trial court. *Lancaster*, 324 F.3d at 438. The Court need not determine whether Petitioner was prejudiced as a result of the alleged violation of his right to a speedy trial, because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

### iii. Miscarriages of Justice

Petitioner may overcome his procedurally defaulted speedy trial claim, even in the absence of "cause and prejudice," upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). This narrow exception for fundamental miscarriages of justice requires the habeas applicant to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.

Petitioner has not submitted any new and credible evidence from which a reasonable juror could conclude that he was not guilty of the underlying offenses. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the speedy trial claim.

### b. Alternative Analysis

11

One could argue that the state court's decision was primarily a ruling on the merits, because the court of appeals thoroughly analyzed Petitioner's speedy trial claim after noting that the claim was not properly preserved.  If a "state court's decision rested primarily on a ruling on the merits . . . , its decision would not be independent of federal law."  *Stewart v. Smith*, 536 U.S. 856, 860 (2002).  The Court nevertheless concludes for the following reasons that Petitioner's claim has no merit even if it is not procedurally defaulted.

The Speedy Trial Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ."  U.S. Const. VI.  The right to a speedy trial applies to the states through the Fourteenth Amendment.  *Maples v. Stegall*, __ F.3d __, __, No. 04-1880, slip op. at 4 (6th Cir. Oct. 25, 2005) (citing *Klopfer v. North Carolina*, 386 U.S. 213 (1967)).  In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court stated that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. . . ."  *Id.* at 522.  To facilitate this analysis, the Supreme Court devised "a balancing test, in which the conduct of both the prosecution and the defendant are weighed."  *Id.*  at 530. Courts should consider the length of the delay, the reason for the delay, the defendant's assertion of the right, and any prejudice to the defendant.  *Id.*  These four factors are related to one another, and they "must be considered together with such other circumstances as may be relevant."  *Id.* at 533.

### i.  Length of the Delay

The length of the delay

is a threshold requirement.  If the length of the delay is not "uncommonly long,"
then judicial examination ends.  *Doggett v. United States*, 505 U.S. 647, 652

12

(1992).  The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier.  *United States v. Marion*, 404 U.S. 307, 320 (1971); *Redd v. Sowers*, 809 F.2d 1266, 1269 (6th Cir. 1987).  A delay approaching one year is presumptively prejudicial and triggers application of the remaining three factors.  *Doggett*, 505 U.S. at 652 n.1.

*Maples*, No. 04-1880, slip opinion at 4-5.

Petitioner was arrested on July 3, 2000, and his trial was held eighteen months later on January 8, 2002.  Thus, the delay was presumptively prejudicial, and the Court must consider the other factors.

### ii.  Reasons for the Delay

A five-month delay in bringing Petitioner to trial was due to defense motions.  The record indicates that, on October 31, 2000, Petitioner filed a motion to dismiss, claiming that his right to due process was violated by pre-arrest delay.  On December 6, 2000, the trial court denied the motion without prejudice.  In addition, on August 3, 2001, Petitioner moved to suppress Officer Schwartz' identification of him.  This motion

required an evidentiary hearing [which was] held on November 14, 2001. . . .
[A]t the conclusion of the evidentiary hearing, the trial court entered an order adjourning the trial date for forty-nine days to allow the parties to file briefs on the legal issues raised by the evidentiary hearing . . . .  [D]efendant stipulated to an adjournment of a pretrial date for two weeks, from November 13, 2000, to November 27, 2000.

*Cousins*, Mich. Ct. App. No. 239767, at 4.[2]

Resolution of pretrial motions is a presumptively justifiable reason for a delay, which should not be attributable to the State.  *See United States v. O'Dell*, 247 F.3d 655, 668 (6th Cir. 2001) (citing *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997), and *United States v.*

---

[2]  Petitioner also filed a motion for an expert witness (Tr. Apr. 18, 2001),but the Court is unable to determine the extent to which this motion delayed his trial date.

13

*Jones*, 91 F.3d 5, 8 (2d Cir. 1996)). Thus, a considerable portion of the delay beyond one year is attributable to Petitioner.

As for the remaining delay, Petitioner states that the trial court adjourned one pretrial conference at the prosecutor's request and one pretrial at his (Petitioner's) request. The case also was referred to the drug court. Even assuming that these delays were attributable to the State, there is no evidence that the prosecutor attempted to delay the case for an improper reason. Neutral reasons such as negligence or overcrowded dockets weigh less heavily against the state than delays motivated by bad faith, harassment, or attempts to seek a tactical advantage. *Maples*, No. 04-1880, slip opinion at 5 (citing *United States v. Schreane*, 331 F.3d 548, 553-54 (6th Cir. 2003)).

### iii.  Assertion of the Right; Prejudice

Petitioner did not assert his right to a speedy trial before trial[3], and he has not alleged any specific prejudice as a result of the delay in bringing him trial. The record indicates that he was confined to jail for a few weeks, then released on bond, and charged over a year and a half later. Petitioner used the delay to his advantage by asserting a defense of mistaken identity and by attempting to attack Officer Schwartz' memory.

### iv.  Summary

The Michigan Court of Appeals concluded that Petitioner's right to a speedy trial was not violated. This Court agrees. On balance, at least three of the four factors used to determine

---

[3]  Petitioner claims that he raised a speedy trial claim in his motion to dismiss, but he asserts elsewhere that his motion to dismiss was based on pre-arrest delay. The Court has not found the motion or any argument on it in the Rule 5 materials, but both the prosecutor and the Michigan Court of Appeals found on direct review that the motion to dismiss alleged pre-arrest delay.

14

violations of the Speedy Trial Clause weigh in favor of the State. The delay was presumptively prejudicial because it exceeded one year, but a minimum of five months of the eighteen-month delay was attributable to Petitioner's motions and stipulated adjournment in the trial date. The remaining delays apparently were not due to bad faith, harassment, or attempts to seek a tactical advantage. Significantly, Petitioner did not request a speedy trial, and he has not alleged any particular prejudice as a result of the delay. Therefore, the state court's conclusion that Petitioner was not deprived of a speedy trial did not result in an unreasonable application of *Barker*. Petitioner is not entitled to habeas relief on the basis of his speedy trial claim even if his claim is not procedurally defaulted.

### B.  Identification Testimony

Petitioner's second habeas claim alleges that the trial court reversibly erred in denying his pre-trial motion to suppress Officer Schwartz' identification of him. Petitioner contends that Schwartz' identifications of him before and at the preliminary examination were tainted and unduly suggestive. Petitioner also contends that there was no independent basis for Officer Schwartz' identification testimony.

"[A]n identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005) (citing *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967), and *Neil v. Biggers*, 409 U.S. 188 (1972)), *petition for cert. filed* (U.S. Oct. 4, 2005) (No. 05-7004). A reliable identification may be admitted, however, even if the earlier confrontation procedure was suggestive. *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000) (citing *Manson v. Braitwaite*, 432 U.S. 98, 114 (1977), and *Biggers*, 409 U.S. at

15

199).

> Following *Biggers*, [courts] consider the following factors in evaluating
> reliability: 1) the opportunity of the witness to view the defendant at the initial
> observation; 2) the witness' degree of attention; 3) the accuracy of the witness'
> prior description of the defendant; 4) the level of certainty shown by the witness
> at the pretrial identification; and 5) the length of time between the initial
> observation and the identification. 409 U.S. at 199-200. The degree of reliability
> of the identification, as indicated by the above-stated factors, is to be considered
> in light of the degree of suggestiveness of the identification procedure and of the
> totality of the circumstances in determining whether due process requires
> suppression of the identification. *See Manson*, 432 U.S. at 113-14.

*Id*.

### 1. The Facts

The drug transactions occurred on September 28, 1998, October 6, 1998, and October 13,
1998. In February of 1999, Officer Schwartz viewed a photograph of Petitioner, which he
obtained from the Michigan Department of Corrections. The photograph was taken over sixteen
years earlier on June 8, 1982.

The preliminary examination occurred on August 22, 2000, almost two years after the
alleged drug transactions. Schwartz identified Petitioner then, but Petitioner, who is an African-
American, apparently was the only African American sitting with counsel at the defense table.

On August 10, 2001, Petitioner moved to suppress Officer Schwartz' pretrial
identifications as suggestive. The trial court held an evidentiary hearing at which Officer
Schwartz testified that he viewed the photograph at the suggestion of Mike Carpenter, an
assistant prosecutor. Carpenter sought a warrant for Petitioner's arrest when Schwartz verified
that it was Petitioner who had sold him the drugs.

The trial court denied Petitioner's motion to suppress Schwartz' pretrial identifications,
after finding that

16

Officer Schwartz already knew the identity of Defendant prior to the photographic identification. Defendant has failed to demonstrate how there was any substantial likelihood of misidentification. In addition, the Court finds that there was an independent basis for the identification. Officer Schwartz was able to identify Defendant as the person from whom he was to purchase the cocaine. Officer Schwartz was in the immediate presence of Defendant and conversed with him.

*Cousins*, Mich. Ct. App. No. 239767, at 5 (quoting the trial court's order denying Petitioner's

motion to suppress Schwartz' in-court identification).

## 2. The State Apppellate Court's Decision

The Michigan Court of Appeals adjudicated Petitioner's identification claim on the

merits and made the following observations and conclusions:

Photographic showups are used to identify the perpetrator of a crime where the witness of the crime does not know the identity of the perpetrator. See *Kurylczyk*, supra, 443 Mich. 289; *People v. Kachar*, 400 Mich. 78; 252 N.W.2d 807(1977); *People v. McCray*, 245 Mich. App. 631, 639; 630 N.W.2d 633 (2001). In this case, the officer knew the perpetrator. He identified defendant on each occasion that they met. The officer was requested to view a photograph. The officer obtained and viewed a photograph of defendant to make sure that the person selling the officer drugs was named Lurdua Cousins and not Eldridge Cousins, as the cross-referencing of defendant's phone number indicated might have been the case. The officer testified that it was possible that "Lurdua" was an alias and obtaining a picture of defendant was done to guard against the possibility that defendant would be named incorrectly in the warrant. The photograph was obtained for name verification and not for identification of an unknown person.
Therefore, the officer's viewing of the defendant's photograph did not constitute an impermissible photographic showup. It is therefore unnecessary to analyze whether there was an independent basis for the officer's in-court identification of defendant.

*Id*. at 5-6.

This Court agrees that the identification procedure used in this case was not the usual

situation where a witness is asked to identify an unknown suspect based on his or her

observations of the suspect during the crime. Officer Schwartz was not asked to identify an

17

unknown suspect when he viewed a single photograph of Petitioner; instead, he was verifying the name or identity of someone he already knew. He viewed the photograph to comply with the request of an assistant prosecutor, who wanted to ensure that they were issuing a warrant for the right person. Schwartz maintained that he could have identified Petitioner at the preliminary examination without having seen the photograph.

Even if the pretrial identifications were unduly suggestive, the identifications were not likely to have resulted in a misidentification. Schwartz had been introduced to Petitioner in person a week or more before conducting any business with him. On three subsequent occasions, he knew whom to look for and with whom he was dealing. He conducted hand-to-hand transactions with Petitioner during which he concentrated mainly on Petitioner's face. Each transaction lasted two to five minutes in a vehicle. Schwartz' estimates of Petitioner's height and weight proved to be quite accurate, and although his identification of Petitioner at the preliminary examination occurred almost two years after the drug transactions, he was sure of his identification. He claimed that each hand-to-hand deal made an impression on him and that he could identify every person with whom he had hand-to-hand transactions over the previous three years.

Given Schwartz' familiarity with Petitioner, the pretrial identification procedures used were not likely to produce a misidentification. *Cf. United States v. Beverly*, 369 F.3d 516, 537-39 (6th Cir.) (concluding that the trial court did not err in denying a motion to suppress pretrial identification made by the defendant's wife where the wife was shown a photograph of her husband and asked whether she recognized the person after being informed that the defendant was arrested for several bank robberies that day), *cert. denied*, __ U.S. __, 125 S. Ct. 229 (2004).

18

Thus, the state appellate court's conclusion did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court decisions on identification testimony, and Petitioner has no right to habeas relief on the basis of his second claim.

### C.  The Evidentiary Claim

The third habeas claim alleges that the trial court erred in overruling Petitioner's objection to testimony about records maintained by the Secretary of State.  The records pertained to the vehicle Petitioner drove to meet Officer Schwartz for the second and third drug transactions.  Officer Schwartz testified at trial that there was no record for the particular license plate on Petitioner's car and that the vehicle identification number for the car indicated that the car was registered to Petitioner with a "junk title."  Defense counsel objected on the grounds that the prosecutor had not provided him with the pertinent documents and did not disclose the information before trial.  The trial court overruled defense counsel's objections and permitted the prosecutor to proceed.  The prosecutor then elicited testimony from Schwartz once again that the car was registered to Petitioner with a "junk title."  (Tr. Jan. 8, 2002, at 57-60.)

Petitioner alleges that the trial court should have sustained defense counsel's objection to the evidence because the prosecutor violated Michigan Court Rule 6.201(H), which reads:

> (H) Continuing Duty to Disclose.  If an any time a party discovers additional information or material subject to disclosure under this rule, the party, without further request, must promptly notify the other party.

Petitioner alleges that the prosecutor also violated Michigan Rule of Evidence 803(5), which is an exception to the hearsay rule for recorded recollection.  Petitioner states that, because reading the records was material to Schwartz' testimony and not cumulative evidence,

19

its admission resulted in a miscarriage of justice and an unfair trial.

The Michigan Court of Appeals determined that Officer Schwartz' testimony about the junk title was not discoverable material and, therefore, the prosecutor was not required to provide the Secretary of State documents to defense counsel as part of his continuing duty under Rule 6.201(H). The court of appeals stated that the hearsay objection was not preserved for appellate review because Petitioner did not make that objection at trial. In addition, the court found that the error did not affect the fairness or outcome of the proceedings in light of the "the unrelieved evidence of defendant's guilt." *Cousins*, Mich. Ct. App. No. 239767, at 6.

The Supreme Court has stated that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A federal court may grant the writ of habeas corpus only if the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (citing *McGuire*, 502 U.S. at 69-70), *cert. denied*, __ U.S. __, 125 S. Ct. 168 (2004).

Officer's Schwartz' testimony regarding the junk car title was not a significant aspect of the State's case against Petitioner. Therefore, admission of the testimony was

20

not fundamentally unfair and did not deprive Petitioner of a fair trial.  The alleged error did not rise to the level of a federal constitutional violation and, consequently, is not cognizable on habeas review.   Alternatively, the disputed testimony was harmless error because it could not have had a "substantial and injurious effect or influence in determining the jury's verdict" in light of the overwhelming evidence of Petitioner's guilt.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### D.  The Sentence

The fourth and final habeas claim attacks Petitioner's sentence on more than one ground.  First, Petitioner contends that the trial court should have departed from the mandatory minimum ten-year sentence for delivering 50 to 224 grams of cocaine, because the police engaged in sentencing entrapment.  Second, Petitioner alleges that his sentence was cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  Finally, Petitioner asserts that the trial court violated state law by considering only punishment and protection of society when sentencing him and gave no consideration to the deterrent or rehabilitative effects of the sentence.  He seeks lower minimum and maximum terms of imprisonment.

The Michigan Court of Appeals determined that Petitioner failed to preserve his challenge to the sentence by objecting at his sentence proceeding.  Although Petitioner could have raised his claim of "sentencing entrapment" at the proceeding, it would have been difficult to object to his sentence on the other grounds alleged here without knowing in advance what would occur.

Even if Petitioner's sentencing claim is procedurally defaulted as a result of Petitioner's failure to object in the trial court, "[p]rocedural default is not a jurisdictional bar to review on the

21

merits." *Howard*, 405 F.3d at 476.  The Court, therefore, will proceed to address the merits of

Petitioner's fourth claim.

### 1.  Violations of State Law; Proportionality; Cruel and Unusual Punishment

The alleged violations of state law  regarding the factors to be considered at sentencing

are not grounds for habeas corpus relief.  As previously explained, "federal habeas corpus relief

does not lie for errors of state law." *Jeffers*, 497 U.S. at 780.  Petitioner's Eighth Amendment

claim lacks merit because a plurality of the Supreme Court has held that "the Eighth Amendment

contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991).

"Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at

1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).  "The gross

disproportionality principle reserves a constitutional violation for only the extraordinary case."

*Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

The Supreme Court determined in *Harmelin* that life imprisonment without the

possibility of parole for possession of more than 650 grams of cocaine was not cruel and unusual

punishment even though Harmelin had no prior felony convictions.  In another drug case, the

Supreme Court determined that forty years in prison for possession and distribution of

approximately nine ounces of marihuana was not cruel and unusual punishment under the Eighth

Amendment.  *See Hutto v. Davis*, 454 U.S. 370 (1982).

Supreme Court cases involving recidivists are also instructive.  In *Rummel v. Estelle*, 445

U.S. 263 (1980), the Supreme Court held that a recidivist's life sentence (with the possibility of

parole) did not constitute cruel and unusual punishment even though the offense was obtaining

$120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years

in prison.[4]  The Supreme Court held in *Andrade* that a recidivist's minimum sentence of fifty

years in prison for two minor property offenses did not violate the gross disproportionality

principle.  And in *Ewing v. California*, 538 U.S. 11 (2003), the Supreme Court held that a repeat

offender who was sentenced to a minimum term of twenty-five years for theft of personal

property worth about $1,200 did not violate the Eighth Amendment's prohibition on cruel and

unusual punishments.

The Michigan Court of Appeals concluded that Petitioner's sentence was not cruel and

unusual punishment.  This conclusion was not contrary to, or an unreasonable application of,

clearly established Supreme Court precedent as set forth above.  Therefore, Petitioner has no

entitlement to the writ of habeas corpus on the basis of his Eighth Amendment claim.

## 2. Sentence Entrapment

Petitioner contends that the police engaged in sentence entrapment by arranging to buy a

second ounce of cocaine from him to secure a ten-year sentence.  There is no constitutional basis

for an entrapment defense, *United States v. Russell*, 411 U.S. 423, 433(1973), and the Sixth

Circuit "has never acknowledged sentencing entrapment as a valid basis for a downward

departure under [sentencing] guidelines."  *United States v. Jones*, 102 F.3d 804, 809 (6th Cir.

1996).

> In a line of unpublished cases, however, the court has assumed that if the facts of
> a case demonstrate that the government manipulated or otherwise entrapped the
> defendant for the purpose of increasing his sentence, the defendant may be
> entitled to relief.  [The court] has defined sentencing entrapment as:  outrageous
> official conduct which overcomes the will of an individual predisposed only to

---

[4]  Rummel's two prior felonies consisted of:  (1) fraudulent use of a credit card to obtain
$80.00 worth of goods and services, a felony punishable by two to ten years in prison; and (2)
passing a forged check for $28.36, a crime punishable by two to five years in prison.

23

dealing in small quantities for the purpose of increasing the amount of drugs and
the resulting sentence of the entrapped defendant.

*Biggs v. United States*, 3 Fed. Appx. 445, 448 (6th Cir. 2001) (unpublished opinion).

Petitioner points out that there is no evidence that the police arranged to buy increasing

amounts of cocaine to find his supplier or for some other legitimate investigative purpose.  While

this is true, there also is no evidence that the police continued to buy from Petitioner solely to

secure a harsher sentence.  The evidence does support the conclusion that Petitioner was

predisposed to sell the amounts for which he was convicted.  Officer Schwarz testified that, on

September 28, 1998, Petitioner sold him a quarter ounce of cocaine for $325 and informed him

that the cocaine was so good, he would have to charge Schwartz more money for the same

amount the next time.  On October 6, 1998, Petitioner delivered another quarter ounce of cocaine

to Schwartz, this time for $350.

On October 13, 1998, Schwartz spoke with Petitioner by telephone and inquired about

the price for an ounce or two of cocaine.  Petitioner responded that the price would be $1,200 for

an ounce and $2,400 for two ounces.  He advised Schwartz to page him when he was ready to

meet him.  Later that evening, Schwartz paged Petitioner and the two of them negotiated a price

of $2,300 for two ounces of cocaine.  Petitioner subsequently delivered two baggies of cocaine

to Schwarz for $2,300.  (Tr. Jan. 8, 2002, at 43-50.)

The Court concludes from the record that Officer Schwartz' conduct was not outrageous

and that Petitioner was predisposed to sell at least two ounces of cocaine.  "He was . . . not an

'unwary innocent' but an 'unwary criminal.'"  *Russell,* 411 U.S. at 436 (quoting *Sherman v.

United States*, 356 U.S. 369, 372 (1958)).  Therefore, even assuming that Petitioner has stated a

federal constitutional claim, the state court's conclusion that there was no basis for his

24

sentencing-entrapment claim did not result in a decision that was contrary to, or an unreasonable

application of, Supreme Court precedent.

## IV.  Conclusion

Petitioner's claims lack merit because they are not cognizable or are procedurally

defaulted or because the state court's adjudication of the claims was not an objectively

unreasonable application of Supreme Court precedent.  The habeas petition, therefore, is

DENIED.


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 7, 2005

The undersigned certifies that a copy of this
document was served on the attorneys of record
and petitioner by electronic means or U.S. Mail on
November 7, 2005.

s/Carol A. Pinegar
Deputy Clerk

25